Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the 11th Circuit. This morning we have on the calendar for the first case, Smith v. Crisp Regional Hospital, Inc. And we will hear first from Attorney Smith. Good morning. May it please the court, Bonnie Michelle Smith for the appellant Michael Smith. Time is a precious commodity in health care and with the court. So I'll get straight to the crux of what we're here to discuss today. The district court opinion on page 8 admitted that the 11th Circuit had not addressed whether a hospital's delay in transferring a patient is a violation of the EMTALA. What the appellant seeks today is a ruling on whether delay does in fact trigger the EMTALA. Counsel, this is Judge Lagoa. Can I ask you just a question that just goes to the heart of the matter? Yes, ma'am. Can you point to where to language in the EMTALA statute that makes it an undue delay in transferring a person to another medical facility a violation of the act? Show me where or point to language in the act that makes it a violation, please. Sure. In the act, it says the transfer must be appropriate. And it's our argument then that an undue delay would then be inappropriate. What Crisp Regional Hospital would have us to believe is that because the EMTALA statute and Judge Lagoa is correct, it doesn't say a specific time. That because the statute is silent on time, that any time frame on a patient transfer would be an appropriate time, whether it was four hours, four days, four weeks. Because the EMTALA does not impose a bright line time frame, then any time would be okay. Surely that argument is contraindicated with the purpose of the enactment of the statute. Counsel? Yes. This is Robin Trostenbaum. Here's my concern about what you're suggesting. The way I read the statute is that it was enacted to avoid the practice of one hospital dumping its patients prematurely before they had been screened and just so that they would not have to deal with a patient. And if we construe appropriate transfers the way you've suggested, then we're going to create exactly the problem that it seems to me that the legislation was designed to prevent. I wonder if you want to address that. Sure. Judge Rosenbaum, you're correct. The statute was clearly focused on making sure that the other secondary hospital didn't refuse to take the patient. However, with the purpose of the legislation to avoid patient dumping, certainly then the statute couldn't possibly mean that you could take however long that you wanted to. I'm not asking the court to issue a bright line ruling saying that four hours is too long, but what I would like to see is some criteria of what determines a delay so that then we could be kicked back to the district court for further discovery and the court could rule whether or not we had reached that threshold. I'm certainly not suggesting that the court should be running a time clock and saying that 30 minutes is too long or four hours is too long because that's not the purpose of the court. But it's almost like in an employment discrimination case when you've got, under McDonnell Douglas, when you've got bright line things that you've got to check off on your box. I would love to see some kind of guidance from the court about at what point- Counsel. Yes. This is Jessica Lago again. Can you address for me why we shouldn't follow the reasoning of Fraticelli-Torres versus hospital models? Yes. From the First Circuit. Yes. or the St. Anthony decision, and both of those are in different circuits. It's important then to look back then, and I understand that the EMTALA does not grant the appellant any kind of federal malpractice, and I'm not asking the court or even suggesting that we assume that this is a federal malpractice statute. But counsel, what you're asking for is a determination that there was a delay in treatment as a result of them not transferring the minor child within, you know, less than X amount of hours, so we're not going to get into the exact amount of time. But isn't that a claim that you have under state law? Yes. You're right about the timeframe, because the crux of the matter is that it took too long. Yes. But isn't that a claim under state law? I'm having difficulty understanding. You say that you understand, and you're conceding that this is not a federal malpractice statute, but in essence, the claim that you're really trying to bring is a federal malpractice claim. The only way to really affect change on a hospital is through the EMTALA statute, because it creates a private right that effectuates lasting change, because under the CMS, the Centers for Medicaid and Medicaid Services, they issue rulings on the basis of if there were an EMTALA issue or trigger. So the only way you're going to affect real change on guidelines about how long you're going to hold somebody at the hospital before you transfer is you're going to have to then have an EMTALA change, and that's why we did not. It may or may not be true that there needs to be a federal statute to affect real change on this. The problem is that it does not appear from the language or the legislative purpose that this particular statute, EMTALA, was designed to do that. And that's where I'm having a problem. In other words, the federal government does not have to direct legislation at every problem that there is. It can be selective in what it chooses to direct legislation at. And so it could have determined, or maybe sort of negatively determined rather, that it wasn't going to address this particular problem and instead leave it to the states to address. And that's where I'm having the problem. Why is it not the case that the problem you're talking about is addressed only by the state causes of action, like medical malpractice, as opposed to by this federal statute, which appears designed instead to address exactly the opposite problem, that is premature so-called patient dumping? Well, the way the statute is laid out, and if you interpret it that time doesn't matter, then technically then you could hold a patient indefinitely that you never have to transfer. And isn't that really then the same as patient dumping if you never transfer the patient? Two minutes remaining. Isn't the case law that's suggesting, counsel, that, and I think there's cases on point, which is if you don't transfer, the statute does not apply. So I think that answers your question. Except then the paperwork was signed to transfer the child at 10.30 and transfer didn't effectuate with the child getting to the children's hospital until 3.25 a.m. So then is the delay in the transfer then basically amounting to patient dumping? Counsel, this is Judge Anderson. I have three problems with your argument that we should read into the word, quote, appropriate, a broad meaning to include timeliness. First is I don't think you argued that in your brief. Second, if we did that, we would, I think, be in effect incorporating all the state law as to any negligent act in the process of transferring. And third, the statute itself defines appropriate, and it doesn't say anything about timeliness. It says rather something specific about appropriate personnel being qualified personnel during the transfer and there has to be an acceptance of the transfer by the receiving hospital and that kind of thing. So would you answer those in order, all three? Yes, Judge Anderson. I see that I'm beyond or pretty close to the end of my time. Is it okay to continue? Yes, please go ahead and answer the questions and then you can take a break and you'll reserve the full amount of your rebuttal time. All right, thank you. All right, you're right, Judge Anderson. The word appropriate doesn't necessarily contemplate timeliness, and you are right that I'm asking the court to interpret appropriate under state law, but not on a bright line ruling. If there were a series of guidelines so that the district court then could decide then was, in fact, the transfer appropriate? We never made it to discovery in this case. So just because you send the case back for further review, it doesn't mean that we win. It just means there's further discovery and the court will still have to rule or there will be a jury question on whether or not what happened in this case was appropriate and timely. Thank you, counsel. Judge Anderson, did you have any further questions? She did not answer my question as to whether she argued in the blue brief, the initial brief, that the word appropriate should be interpreted to include timeliness. Counsel, would you like to respond to that and just that, please? I don't think I put in there, you are right, Judge Anderson, the language per se about timeliness being appropriate, but I did argue in the reply brief under the Carrera case that this is part of the gray area that I'm asking the court to address under first impression. All right, thank you, counsel. Judge Anderson, did you have anything further that you wanted to address? No, thank you very much. Thank you. Okay, so that brings us to Mr. Hanson, and Ms. Smith, you have reserved five minutes per rebuttal. Thank you. Good morning, and may it please the court. My name is David Hanson. I represent Pelley-Crisp Regional Hospital. The short story here is that MTOWL was not created to form a federal medical malpractice law. It was created to prevent dumping of patients, and it was narrowly tailored and crafted specific to that purpose. The statute has two primary requirements. First, a screening requirement, and second, a stabilization requirement, and then there are provisions regarding transfer that apply if a patient cannot be stabilized, so unstabilized transfers, although those provisions regarding transfer are somewhat subsumed within the concept of stabilization. Here we're really faced with the single question, which your honors have highlighted and which appellant highlights is whether the timeliness of transfer is contemplated as something that MTOWL regulates. The short answer is no. To get straight to the crux of the matter, there is no language within the statute which could be interpreted to impose a timeliness requirement upon transfer. Ms. Smith referenced the phrase appropriate transfer, which appears in subsection C-2 of the statute. Appropriate transfer is actually defined, as Judge Anderson aptly pointed out. There are five requirements for an appropriate transfer, C-2A through E. Each of those requirements is a bit technical requirement. You have to provide the medical records. The new receiving facility has to accept the patient. You have to use an ambulance. You can't send them via private car, or if you've got to use an air flight, you've got to use an air flight. You have to have an appropriate transfer mechanism. In none of those requirements does there appear any language which could impose a timeliness requirement upon the transfer. Congress certainly knew how to define what an appropriate transfer was. They did so within the statute in subsection C-2. In none of that definition did they include any suggestion that timeliness was one of the requirements for transfer. And that makes sense because timeliness is a question that is left to the medical discretion of the medical professionals providing care. And so thus would be something regulated under state malpractice law. When you start talking about did you do it quick enough, should you have stabilized more, should you have given another round of IV, whatever the underlying fact might be, in this case we're talking about a child in diabetic ketoacidosis, should they have given insulin, for example, and should they have waited for another dose of insulin before transferring, or should they have transferred before giving another dose of insulin. Those level of questions are best left to the voluminous body of state malpractice law. And this is Judge Anderson interrupting. If the word appropriate were interpreted as your opponent suggests, then all of those things that you mentioned, negligent acts perhaps in not doing the insulin just right or not doing something else that is done by the medic in the ambulance on the way, all of that would be inappropriate and would be brought into this federal act, which would amount to incorporating state negligence law, would it not? I do agree that if appropriate transfer is interpreted to mean within the standard of care, which is what Georgia usually uses to refer to medical malpractice cases, if appropriate is interpreted as such, those things would be engrafted onto MTALA. The problem with interpreting the phrase appropriate transfer to include all those things is that Congress specifically delineated what an appropriate transfer was in the statute. They didn't just say, two, appropriate transfer, an appropriate transfer to a medical facility must occur and put a period. They said an appropriate transfer to a medical facility is a transfer, and then they listed five different things, one of which has subparts, which are required for an appropriate transfer. In other words, Congress defined what an appropriate transfer was, and they did not choose to include timeliness as one of the factors. They did not choose to include appropriate medical decision-making regarding the patient as one of those factors. In other words, they did not include the phrase one which complies with the standard of care. If that was what they intended to do, if Congress intended to bring medical malpractice claims related to transfer within the realm of MTALA, they could have added a subsection F to the definition of appropriate transfer, which said a transfer subsection F could have said one that complies with the standard of care. That would have clearly and easily brought transfer within the realm of MTALA. That does not exist, and thus there's no linguistic hook. There's no ambiguity in the statute which would cause us to turn to medical malpractice law in Georgia to interpret what Georgia says and why does Georgia recognize a right to transfer or something like that. There's no hook to bring in state-level law here. In the cases that appellant cites are entirely inapposite on this point, specifically St. Anthony from I believe it was the Tenth Circuit. The only part of that opinion which references state law is regarding state agency law to determine whether the individual who denied accepting the transfer had the ability to act on behalf of the hospital. In other words, were they an agent under state law? That's a state law question that's not contemplated by MTALA. Here, transfer is specifically contemplated by MTALA, and there is language specifically related to transfer. And plaintiffs, or excuse me, appellants don't allege any violation of MTALA other than generally speaking not transferring fast enough. But there's no language within MTALA that requires a faster transfer. This court, we believe, should adhere to the First Circuit and follow the well-reasoned opinion of the First Circuit and Fraticelli-Torres and hold that MTALA does not impose a timeliness requirement upon transfer and remains an anti-dumping statute and not a federal medical malpractice statute. I'm happy to answer any further questions that the judges might have. However, I don't have anything else to add at this time. All right. Thank you, counsel. And we will hear again from Ms. Smith. Thank you. What Chris Regional attempts to say is that once transfer was signed off on the paperwork, because the paperwork in this case was signed off at 10.30, yet the effectuation of the transfer didn't happen until 2.30. The hospital can't then just decide to transfer and then default and deny liability based on, well, it doesn't matter, the time is not contemplated. Surely that's not what was intended by the statute. A child in diabetic ketoacidosis, time is very important. And there was not a gunshot wound. There wasn't a heart attack patient. We certainly weren't in the middle of a pandemic. Just last night I heard about ambulance delays across the country, and they were contemplating just a couple of hours about then how critical that is. I understand that this is a narrow issue of the law, but I would ask that the court allow the case to be sent back and there to be determination on transfer based on state law and not on Fraticelli in the First Circuit, to be more like Carrera in saying that there are gray issues of the law and that we interpret those to clear up that ambiguity. All right, thank you. Thank you. I'm sorry. Thank you, counsel. All righty. We will take that under advisement.